UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROBERT WILSON #633249          CIVIL ACTION NO. 19-cv-712

VERSUS          JUDGE ELIZABETH E. FOOTE

JERRY GOODWIN          MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Robert Dale Wilson ("Petitioner") was charged with molesting three juveniles, H.R., P.B., and B.B. A Caddo Parish jury found him guilty of molesting each of the three victims. The state appellate court reversed the convictions regarding P.B. and B.B. The girls made incriminating statements in pretrial interviews, but they recanted at trial, which made the pretrial statements inadmissible as substantive evidence under state law evidence rules. The conviction for molestation of H.R., a juvenile under age 13, and a 25-year sentence were affirmed. State v. Wilson, 189 So.3d 513 (La. App. 2d Cir. 2016), writ denied, 218 So.3d 629 (La. 2017). Petitioner then pursued a post-conviction application in state court.

Petitioner now presents a federal habeas corpus petition in which he raises essentially the same claims presented in his post-conviction application: (1) denial of the right to cross-examine H.R. about an alleged prior untrue claim of sexual assault, (2) ineffective assistance of counsel, and (3) a challenge to the state court's harmless error

finding with respect to the cross-examination issue. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

H.R., then 11, visited her pediatrician, Dr. Holloway-Alford, and complained of redness and pain in her vaginal area. H.R. told the doctor that her grandfather, Petitioner, put his fingers in her vagina. The doctor reported this information to law enforcement, and an investigation began.

The investigation grew to include H.R. plus 11-year-old P.B. and 13-year-old B.B., two girls who lived next door to Petitioner. P.B. was identified as another of Petitioner's granddaughters. B.B. called Petitioner her "Papaw" and considered him family even though they were not related by blood. The three girls were interviewed by a forensic interviewer at the Gingerbread House, a children's advocacy center. Petitioner was also questioned by law enforcement.

At trial, Dr. Holloway-Alford testified that she first saw H.R. in 2011 and prescribed Monistat cream to treat labial redness. The cream was for external application only. During a 2012 head-to-toe examination as part of a checkup, H.R. complained, "I hurt when I pee." She still had labial redness and said, "Papaw sticks his fingers where the blood comes out," which the physician interpreted to refer to her vaginal area during her menstrual cycle. Dr. Holloway-Alford said the redness she saw could have been caused by the alleged molestation but also by actions such as vigorous wiping.

Angela Wilson is Petitioner's daughter and the mother of H.R. She testified that she, H.R., and her two sons lived with her parents in Keithville for a time but moved to

nearby Shreveport in about 2010. H.R. had problems with skin rashes in her vaginal area since infancy, and the adults in the family helped apply a cream prescribed by her doctors. Angela said that about a year before this incident she spoke with her parents and said that because H.R. had reached puberty only Angela and Angela's mother would apply the cream from that point forward.

    Angela said that Petitioner had otherwise been a good father and grandfather. He dedicated one day each month to each of his several grandchildren, and the grandchild could pick an activity such as a going to a movie or eating at a restaurant. Angela testified that H.R. had long participated in the special days, but about a month before her appointment with Dr. Holloway-Alford H.R. started making excuses about not wanting to go or to visit her grandparents. Angela said that Petitioner worked as a contractor and painter, and H.R. or other grandchildren would sometimes go to work sites with him.

    H.R. was 13 at the time of trial. She testified that she loved her grandfather, whom she called Papaw, and they previously had a close relationship. She described how Petitioner would spend one day each month with each of his several grandchildren. H.R. said that she knew the difference between lying and telling the truth, and she told the truth in her Gingerbread House interview. A video recording of the interview was played for the jury.

    H.R. was 11 at the time of the Gingerbread House interview. She told the interviewer that she had bad problems with what she called yeast infections "down there" and, if her grandmother was sleeping, she asked her grandfather (Petitioner) to give her medicine. She said that he eventually "like put his finger in the hole" and would "go like

back and forth sometimes." But other times he would "just stick it in there." Sometimes, "he'd like move, like he'd be on top," and she "could feel his parts" on her part.

H.R. said these events would take place in her old room from when she lived with her grandparents, or sometimes in a recliner in the living room. She said that Petitioner would sometimes take her to work with him, and they would go to homes or buildings where no one was present, and he would do the things to her at those places. She described how he also took her to a building behind his house and put her on a table. He told H.R. that he was going to check for "scratches or anything," but he hurt her and made her cry, and she told him to stop. H.R. said that Petitioner was wearing a clear or blue rubber glove when he "put his finger in there" in the shed. H.R. said she once told her aunt, who asked the same questions as the interviewer and then told H.R.'s mother. H.R. said that her mother "was really messed up because my mom and my aunt was done, too," by Petitioner's brother. H.R. described how Petitioner would access her "top part" by pulling up her shirt, and for the bottom he would pull down her skirt and underwear and "spread my legs out."

Petitioner testified that he and his wife have five children and twelve grandchildren. He said he had a playful relationship with his grandchildren, and he would often engage in horseplay such as tickling or blowing raspberries on their sides. He had a good relationship with H.R., who had experienced rashes since early childhood. He said she once broke out all over her body and even stopped breathing, but a doctor revived her with an EpiPen. Because of such incidents, he often helped "doctor" his family. He said he had applied ointment to H.R., often at her request, and only on the outside of her body. On cross-

examination, Petitioner admitted that his daughter asked him, about a year before the investigation, to stop applying ointment to H.R. He admitted that he did apply ointment after that conversation, but only once when he was in his backyard shed with H.R. He claimed that H.R. initiated the matter by saying that the rash was "doing it again." He said that she sat on a table in the shed and pulled down her own pants. Petitioner denied that he performed the other actions H.R. described. He never told H.R.'s mother about applying the ointment in the shed.

**Right to Confront and Cross-Examine a Witness**

    **A. Introduction; Waiver**

Petitioner's habeas application asserts as its first issue the alleged denial of his defense counsel's ability to cross-examine H.R. "regarding an untrue story the witness had previously told about her father sexually assaulting her." Petitioner did not file a memorandum or other submission that further explained this habeas claim, but he did assert a similar claim in his post-conviction application. The State argues that this and the other claims should be deemed abandoned or waived for lack of adequate briefing. There may be a basis for such a finding[1], but the undersigned will address the claims on the merits.

The constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, and that includes the right under the Confrontation Clause to rebut the State's evidence through cross-examination in an effort to show that a witness is

---

[1] Lookingbill v. Cockrell, 293 F.3d 256, 263 (5th Cir. 2002) ("Where a habeas petitioner fails to brief an argument adequately, we consider it waived."); Pea v. Cain, 2017 WL 1197872, *12 (M. D. La. 2017) (collecting district court decisions that found waiver where a habeas claim was not adequately briefed).

biased or unbelievable. Kittelson v. Dretke, 426 F.3d 306, 318-19 (5th Cir. 2005). But rules that exclude evidence from criminal trials do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. U.S. v. Scheffer, 118 S.Ct. 1261, 1264 (1998). "[T]he accused … must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi, 93 S.Ct. 1038, 1049 (1973).

### B. Trial Court Proceedings

When defense counsel was cross-examining H.R., she asked, "Did you ever tell a story about your father kidnapping or doing anything sexual to you?" The prosecutor objected that the information should be excluded under Louisiana Code of Evidence article 412, which governs evidence of a victim's past sexual behavior and requires a pretrial written motion to seek leave to introduce such evidence. Defense counsel responded that she was not going into H.R.'s sexual history. Rather, she was going to ask about H.R. making up stories.

The court stated that such an inquiry would be subject to Louisiana Code of Evidence article 608, which allows an attack on credibility of a witness by evidence of general reputation but generally prohibits inquiry into or extrinsic evidence of specific acts. The court then asked defense counsel if she had credible evidence to support the suggestion of a prior false claim. Counsel stated that there were "other witnesses that said that they were present when that statement was made, and that they know that that statement was not true." Defense counsel conceded that H.R. had not recanted the allegation.

The court held that the issue should have been the subject of a pretrial hearing, but he gave the defense the opportunity to disclose its supporting information if it wished to have a chance to ask the question. Defense counsel replied that "a witness approached me this week" and said that the claim was made in front of them and "that because they know the parties involved, that they knew that it was not - - it was a false allegation." The court sustained the prosecutor's objection but noted that if there had been a physical impossibility that the claimed event happened, the court would consider allowing the question. Defense counsel then stated that "the person will say it was a physical impossibility because the person accused would not have been present in the state during this time." The court asked what information the defense had to support that, and counsel said, "Simply knowing the individual."

The court questioned the reliability of a witness who came forward only days before trial in a case that had been pending for quite some time, noted the surprise to the State and its inability to investigate and prepare the young witness for the line of questioning, and held that the evidence was "so prejudicial that it outweighs any probative value that might be assessed." Defense counsel clarified that she did not have the information a week in advance. "It's more like 24 hours." The court asked if she wished to memorialize the supporting witness's name, and counsel said, "I'll just stay where we are, your honor." Tr. 422-29.

### C. State Court Decision

Petitioner argued in his post-conviction application that this violated his Sixth Amendment right to confront a witness against him. Judge Brady O'Callaghan, who also

presided at trial, noted a Louisiana Supreme Court decision that addressed the introduction of evidence when a victim is alleged to have made prior false accusations. Under that decision, the trial judge must evaluate the evidence by determining whether reasonable jurors could find, based on the evidence presented by the defendant, that the victim made prior false accusations and whether all other requirements of the Code of Evidence were satisfied. State v. Smith, 743 So.2d 199 (La. 1999). Judge O'Callaghan found that there was insufficient evidence to meet the standard for admissibility for prior false allegations under Smith. He noted that the defense relied upon an unnamed person who was never called as a witness for the defense, and their basis for knowledge of falsity was not specifically explained. Unlike in Smith, the victim had not recanted prior accusations. After considering all of these factors, the court held that no reasonable jurors could have found that H.R. made such a false allegation, so the court did not err in excluding the evidence. Tr. 863-64. The state appellate court summarily denied a writ application, citing La. C. Cr. P. art. 930.2 regarding the burden of proof on a post-conviction application. Tr. 932. The Supreme Court of Louisiana denied a writ application in a per curiam opinion that stated Petitioner "fails to satisfy his post-conviction burden of proof" and cited Article 930.2. Tr. 1032-33.

**D. Habeas Analysis**

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). The Kittelson decision cited above set forth rules based on clearly established Supreme Court decisions. The trial judge's decision to exclude the evidence is perhaps debatable under those rules, but it was not so obviously wrong as to be an objectively unreasonable application of those principles. The decision was also based on a quite reasonable assessment of the facts presented at the hearing. Accordingly, habeas relief is not permitted under the demanding standard of Section 2254(d).[2]

Habeas relief was denied on a similar claim in Nevada v. Jackson, 133 S.Ct. 1990 (2013). The defendant was charged with rape and wanted to introduce evidence to show that the victim previously reported that he had assaulted her but that police had been unable to substantiate her allegations. A lower court granted habeas relief, but the Supreme Court summarily reversed in a unanimous per curiam opinion. The Court noted that "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Jackson, 133 S.Ct. at 1992. The evidence rule that was applied in the state trial was similar to LCE article 608 that was applied in this case. The Nevada rule had an exception that allowed admission of evidence

---

[2] In Kittelson, two girls accused the defendant of molesting them. One of the girls recanted immediately. A state investigator testified at trial and created the impression that the recanting companion had also accused the defendant, but the trial court prohibited the defendant from asking the recanting child or investigating officer about the false allegation. The Fifth Circuit granted habeas relief, but the facts here are distinct. There was no recanting by H.R. She was firm in her claim that Petitioner molested her. There was also no false impression of another victim that could not be unexplored. The defense was allowed to fully question the two victims who recanted their claims of abuse.

of previous fabricated sexual assault accusations, but the defendant was required to file written notice and have a pretrial hearing. The Supreme Court stated that none of its decisions clearly established that such a notice requirement is unconstitutional. The Court also noted the reasons provided by the state trial court for excluding the evidence and stated, "No decision of this Court clearly establishes that the exclusion of such evidence for such reasons in a particular case violates the Constitution." Id. at 1994. Petitioner has not cited any clearly established law, as decided by the Supreme Court, that would mandate the allowance of the cross-examination attempted in this case. His claim, like the one presented in Jackson, must be denied.

### E. Harmless Error

Judge O'Callaghan also found in the post-conviction application ruling that, even if the court erred in limiting the cross-examination, any such error was harmless based on the overwhelming evidence of guilt. He pointed to H.R.'s testimony that was consistent with her Gingerbread House interview and supported by Dr. Holloway-Alford's testimony. Tr. 864-65. Petitioner's third claim listed in his habeas petition questions whether the evidence presented at trial constitutes sufficient evidence of guilt for purposes of the harmless error inquiry. The claim is interrelated with the Confrontation Clause claim, so it will be addressed here.

Before a court may grant relief on the basis of a Confrontation Clause violation, the court must apply a harmless error analysis. Kittelson, 426 F.3d at 319. On federal habeas review, the harmless error rule prohibits relief unless a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." There must

be "more than a mere reasonable possibility that it contributed to the verdict." Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir. 1996), citing Brecht v. Abrahamson, 113 S.Ct. 1710, 1714 (1993). See also Fry v. Pliler, 127 S.Ct. 2321, 2328 (2007).

Petitioner's argument assumes that there was an underlying constitutional error, but the court found above that there was no error (and certainly not one that would permit habeas relief under Section 2254(d)). The absence of an underlying error is sufficient to deny any relief with respect to this claim as well. But even assuming there was error in limiting the cross-examination, the state court's harmless error analysis was also reasonable.

The defense was prevented from asking the victim about a prior accusation that the victim had never recanted. If the victim maintained at trial that her prior accusation was true, there is no indication that the defense could have presented evidence to undermine her testimony. They could have called the mystery witness at trial—where the defense did call other witnesses—but they did not. And there was, as the trial court held, strong evidence of guilt. H.R. gave persuasive and detailed testimony, either directly or through her interview statement, that described in detail multiple incidents of molestation committed by Petitioner on separate occasions. Considering the evidence as a whole, the court cannot say that preventing the line of cross-examination about the prior accusation had a substantial and injurious effect on the verdict. Thus, habeas relief is not permitted on this challenge to the harmless error analysis.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner argues that his attorney rendered ineffective assistance of counsel by (1) not requesting a pretrial hearing on the admissibility of evidence and (2) not objecting to the prosecutor's alleged vouching for a witness. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). The state court denied the Strickland claims on the merits.

    **B. Habeas Burden**

Petitioner's ineffective assistance claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under Strickland was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general one, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

**C. Lack of Rule 412 Motion**

Petitioner argues that trial counsel failed to preserve his right to cross-examine H.R. regarding the allegedly untrue story she told about her father assaulting her. When Petitioner presented this argument in his post-conviction application, he supported it with a memorandum in which he argued that counsel should have filed a timely pretrial motion under LCE art. 412 and established that the area of cross-examination was permissible. Tr. 838.

Judge O'Callaghan noted, as he did during the argument at trial, that Article 412, regarding evidence of the victim's sexual history, was not applicable. The defense sought to question the witness about a prior false allegation, not sexual history, for impeachment purposes. Therefore, counsel's alleged failure to move for such a hearing was not deficient performance because no such hearing was required. The court also found that there was not a reasonable probability that the outcome would have been different if counsel had filed any such motion. Tr. 865-66. The appellate court summarily denied a writ application, and the Supreme Court of Louisiana denied a writ in a per curiam opinion that stated Petitioner "fails to show that he received ineffective assistance of counsel" under the standard of Strickland. Tr. 1032-33.

The state court opinions were correct. Article 412 was mentioned in the discussion of the objection, but it was soon realized that the issue was actually governed by Article 608. The court then allowed the defense to make its case for the admissibility of such questioning under Article 608, which opportunity made up for the lack of a pretrial motion

on the issue. It was on the basis of the principles in Rule 608 that the line of cross-examination was not permitted. The lack of a pretrial Article 412 motion ultimately had no effect on the outcome of the objection. There is no basis for granting habeas relief with respect to this claim.

### D. Not Objecting to Vouching for Witness

Petitioner's habeas petition argues that trial counsel failed to object, request a mistrial, or ask for a cautionary instruction in response to the prosecution's improper vouching for the truthfulness of his witnesses. The federal petition does not identify the witnesses at issue or where the alleged vouching took place. Petitioner's post-conviction application pointed to the State's closing arguments. He stated that the prosecutor had argued that Petitioner's family would have preferred that the children keep quiet and not tell the truth, "But thank God they did at the Gingerbread House" and "They told their truth." Tr. 580.

The general rule in state and federal courts is that it is improper for an attorney to vouch for or assert his or her personal opinion of the credibility of a witness when doing so implies that the prosecutor has additional knowledge or information about the case that has not been disclosed to the jury. U.S. v. Young, 105 S.Ct. 1038 (1985); Woodfox v. Cain, 609 F.3d 774, 805 (5th Cir. 2010); State v. Williams, 69 So.3d 556, 559 (La. App. 2d Cir. 2011). "A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses." U.S. v. Gracia, 522 F.3d 597, 600 (5th Cir. 2008).

The trial court rejected the post-conviction argument. The opinion did not specifically address whether there was improper vouching but held that even if defense counsel's failure to object was deficient performance, there was not a reasonable probability that the outcome would have been different. Based on the lack of prejudice, the claim was denied. Tr. 866. The Supreme Court of Louisiana summarily held that Petitioner did not show that he received ineffective assistance of counsel under the Strickland standard.

These merits decisions must be viewed through Section 2254(d), which requires that habeas relief be denied unless the state court decision was an unreasonable application of Strickland. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

The state court decision appears to be an entirely reasonable application of Strickland to these facts. If defense counsel had objected to the alleged vouching, there is no reason to believe that a mistrial or similar relief would have been granted. The aspects of the closing argument that Petitioner now challenges were made after a lengthy argument by the prosecutor about how the jury should deem the children's statements, particularly those made at the Gingerbread House, to be credible. The argument was based on the record evidence and reasonable inferences to be made by the jury. It included reminders that it was the jury's role to assess credibility. "You can judge her credibility, ladies and

gentlemen." "Judge their credibility separately, each case separately." The prosecutor never suggested that his credibility arguments were based on personal knowledge or evidence outside the record. Tr. 578-82. At best, a defense objection might have obtained a cautionary instruction to the jury. There is no basis to conclude that the jury's verdict would have been different had counsel lodged a vouching objection to the closing argument. Thus, the state court's rejection of this claim easily withstands review under the deferential standard of Section 2254(d). Habeas relief is not permitted with respect to this final claim.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of April, 2022.

Mark L. Hornsby
U.S. Magistrate Judge